HEINZ BINDER #87908
ROBERT G. HARRIS # 124678
JULIE H. ROME-BANKS #142364
BINDER & MALTER, LLP
2775 Park Avenue
Santa Clara, CA 95050
Telephone: (408) 295-1700
Facsimile: (408) 295-1531
Email: Michael@bindermalter.com
Email: Rob@bindermalter.com
Email: Julie@bindermalter.com

Attorneys for Debtor

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA

# OAKLAND DIVISION

| | |
|---|---|
| In re<br><br>CARDIMA, INC, a California Corporation<br><br>Debtor | Case No. 10-74445-RLE<br><br>Chapter 11<br><br>Date: February 18, 2011<br>Time: 10:00 a.m.<br>Place: Courtroom 201<br>1300 Clay Street<br>Oakland, California |

**MOTION FOR ORDER APPROVING SALE OF SUBSTANTIALLY ALL ASSETS OF THE DEBTOR FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS (11 U.S.C. §§363(f)(2), 363(f)(4))**

TO ENDOSCOPIC TECHNOLOGIES, INC:

Cardima, Inc., a Delaware corporation, the Debtor and Debtor-in-Possession ("Debtor") hereby moves the Bankruptcy Court for entry of an order pursuant to 11 U.S.C. sections 363 (f)(2) and/or 363(f)(4) approving the sale of substantially all of its assets (except for its cash, accounts, avoidance actions, and certain similar assets) to the successful bidder at auction free and clear of liens, claims, encumbrances and interests pursuant to 11 U.S.C. 363(f), including, without limitation, any claim or interest relating to

MOTION FOR ORDER APPROVING SALE OF SUBSTANTIALLY ALL ASSETS OF THE DEBTOR FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS
1

Case: 10-74445    Doc# 39    Filed: 01/14/11    Entered: 01/14/11 18:32:20    Page 1 of 8

any alleged infringement of any patent by the Debtor prior to close of the proposed sale, and any claim arising from alleged product liability occurring prior to closing. Debtor also seeks and waiver of the stay of Federal Rule of Bankruptcy Procedure 6004(h)

The Debtor respectfully represents as follows in support of this Motion:

1. On December 17, 2010, the Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code and is currently in possession of its assets as a debtor-in-possession under 11 U.S.C. §§1107 and 1108. The Debtor is a publicly traded company whose stock is traded on the OTCBB under the symbol "CADME:OB". As of August 11, 2010, there were 14,398,472 shares of common stock outstanding, as well as 5,000,000 of issued preferred shares.

2. The Debtor designs, develops, and previously manufactured and marketed minimally- invasive, single-use, micro-catheter systems for the mapping and ablation of the two most common forms of cardiac arrhythmias: atrial fibrillation and ventricular tachycardia. The Debtor's devices are CE marked and/or have received U.S. FDA clearance for clinical testing only. Some products are currently marketed in Europe, but not commercially approved in the U.S. The Debtor has licensed its technology for the treatment of electrophysiological diseases affecting areas other than the central nervous system. The Debtor sells its products worldwide through both direct sales and distribution channels, with a substantial portion of sales to international customers.

3. The Debtor's balance sheet for the quarter ending June 30, 2010 lists assets (at book value) of $5,110,000, liabilities of $1,550,000, and shareholder equity of $3,560,000. The Debtor was incorporated in the State of Delaware on November 12, 1992, and has incurred losses since its inception. The Debtor had a net loss for the three months ending June 30, 2010 of $3,807,000 on sales of $1,113,000. The Debtor had a net loss for the six months ending June 30, 2010 of $7,277,000 on sales of $1,552,000.

4. In February 2009, the Debtor obtained equity financing of $20 million. Due to ongoing losses since its inception, the Debtor's ability to continue to operate has been predicated on obtaining additional capital through either debt or equity financing. As a result of ongoing losses, the Debtor had approximately $1.7 million of cash on hand as of June 30,

MOTION FOR ORDER APPROVING SALE OF SUBSTANTIALLY ALL ASSETS OF THE DEBTOR FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS
2

Case: 10-74445    Doc# 39    Filed: 01/14/11    Entered: 01/14/11 18:32:20    Page 2 of 8

2010 which was projected to last through September 2010. Despite the substantial efforts of management and consultants, efforts to raise additional capital have not been successful. (A detailed description of these efforts is provided in the re-submitted Supplemental Declaration of Dr. Richard Gaston in Support of Motion for Order Approving Overbid Procedures and Related Matters re Sale of Assets of the Debtor).

5. Faced with declining cash for operations, the Debtor reduced its payroll in September 2010, and terminated all but 14 of its employees. Only five full-time and two part-time employees remain. At the filing of its bankruptcy petition the Debtor had approximately $153,600 cash remaining. In its bankruptcy schedules the Debtor identifies no secured debts, no priority debts, and general unsecured non-priority debts of approximately $1 million.

6. Beginning in 2008 and continuing throughout 2009 and 2010, the Debtor's sales and marketing consultant Richard Gaston (a former member of the Board of Directors and an unsecured creditor), together with Rob Cheney, the Debtor's former CEO, and Tony Shum, the Debtor's former Chairman of the Board, undertook to expose the Debtor to industry constituents and potential investors in an effort to explore various options for obtaining new working capital through additional equity investments and/or a sale of assets. These efforts first began in September, 2008 when the Debtor engaged Roth Capital in a failed attempt to raise $15-20 million. In November, 2008, the Debtor received a loan of $6 million from Mr. Peter Yuan, its largest common shareholder, which was later converted to equity. In February 2009, Mr. Yuan also provided an additional $20 million equity investment in the Debtor. In December 2009 and January 2010, Rob Cheney brought in a potential investor group from Singapore named Crescent Point, to the Debtor's offices in Fremont. The Debtor hoped to raise $40 million from Crescent Point, but following due diligence Crescent Point passed on the opportunity. The Debtor engaged Wedbush Securities in February 2010 to raise $20 million. Wedbush Securities took the Debtor "on the road", seeking investors in Boston, New York and San Francisco for the next several months.

MOTION FOR ORDER APPROVING SALE OF SUBSTANTIALLY ALL ASSETS OF THE DEBTOR FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS

3

7.  The Debtor participated in several in person meetings in the spring and summer of 2010 and engaged in dialogues with the following interested parties: Johnson & Johnson; Boston Scientific Corporation; Medtronic Inc.; St. Jude's Medical Inc.; Edwards Lifesciences Corp.; CR Bard Inc.; Terumo Medical Corp.; Biotronik Inc. (a private European biomedical company); Abbott Laboratories and Microport Medical (a Chinese company). All were made aware of the Debtor's urgent situation and that the Debtor could no longer remain a viable company without some investment or sale of assets. Every one of these companies officially passed without making an offer. Mr. Gaston continued to work the investment fund community as well during this time, without success. By late July, 2010, the Debtor terminated its consulting agreement with Wedbush Securities.

8.  In August, 2010, Mr. Peter Yuan flew from China to meet with Mr. Gaston and another Board member, Dr. Phil Radlick, to discuss further financing of the Debtor. Rob Cheney continued to communicate with other potentially interested parties including Privos Capital and Robert Reid regarding strategic funding during this time period. The offer that the Debtor received in late November and early December 2010 on behalf of Mr. Yuan through PY Acquisition Corporation ("PYA") was the only offer that the Debtor received. The Debtor believes, however, that other parties may remain interested in an auction of the Debtor's assets and therefore brings this motion with PYA having been approved as the stalking horse bidder.

## ASSETS TO BE SOLD

9.  The Debtor proposes to sell the following assets to the successful bidder at auction:

    A.  All personal property, including, inventory, and work in progress.

    B.  All tools and equipment, furniture and office furnishings.

    C.  All trade names, trademarks, service marks, and copyrights.

    D.  All intellectual property, patents, patent applications pending and documented processes.

    E.  All general intangibles.

10. The following assets are excluded from the Sale (i) the Debtor's cash and deposit accounts, (ii) notes receivable and accounts receivable, (iii) deposits other than real

MOTION FOR ORDER APPROVING SALE OF SUBSTANTIALLY ALL ASSETS OF THE DEBTOR FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS
4

property security deposits, (iv) the corporate shell, (v) avoidance actions under the Bankruptcy Code, (vi) rights of setoff against William Wheeler, (vii) tax refunds and tax attributes, and (viii) any governmental grants or awards and the proceeds thereto.

11. On December 22, 2010, the Debtor executed the Purchase Agreement with PYA, subject to approval of the Court. A copy of the Purchase Agreement is attached as Exhibit "A" to the Declaration of Cynthia Trumble In Support of Motion For Order Approving Overbid Procedures And Related Matters Re: Sale Of Assets Of The Debtor (the "Trumble Declaration") which has been resubmitted as part of the evidentiary basis for this Motion. and is incorporated herein by this reference.

12. The Purchase Agreement provides for the sale of certain assets of the Debtor. The Debtor's assets consist principally of the Debtor's intellectual property used in the design, development, manufacture, and marketing of products for the diagnosis and treatment of cardiac arrhythmias, atrial fibrillation and ventricular tachycardia, as well as inventory, personal property, equipment and office furnishings (the "Purchased Assets"). Assets excluded from the sale, as defined in the Purchase Agreement, include the Debtor's cash and deposit accounts, accounts and notes receivable, utility deposits, avoidance actions under the Bankruptcy Code, certain rights of setoff, the corporate shell, tax refunds and attributes and government grants and awards. The Purchase Agreement further provides for the assumption and assignment of certain specified executory contracts and unexpired leases of the Debtor. The sale of the Purchased Assets will be free and clear of all liens, claims, encumbrances and other interests except as provided in the Purchase Agreement.

13. The Purchase Agreement provides for a Cash Purchase Price (as that term is defined in the Purchase Agreement) of $650,000.00 payable prior to or at closing of the sale by wire transfer to the Debtor, plus the assumption of certain liabilities of the Debtor and payment of Taxes (as defined in the Purchase Agreement) associated with the Sale (collectively the "Purchase Price"). PYA has provided a $100,000 good faith deposit, which is currently held in counsel's trust account. In addition, PYA will be assuming certain executory contracts, including a development and manufacturing agreement and intellectual

MOTION FOR ORDER APPROVING SALE OF SUBSTANTIALLY ALL ASSETS OF THE DEBTOR FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS

5

Case: 10-74445    Doc# 39    Filed: 01/14/11    Entered: 01/14/11 18:32:20    Page 5 of 8

property licensing agreement between the Debtor and Stellartech Research Corporation ("Stellartech") and the purchaser will directly pay Stellartech and Surmodics for all costs of cure under those agreements, estimated to be $403,753. Since PYA is paying all cure costs associated with any contracts to be assumed and assigned, the Debtor estimates that the gross proceeds from the Sale should be $650,000.

    14. Although the Debtor believes that there are no specific claims that will actually create successor liability for the ultimate purchase of the assets, there are two types potential claims from which the purchase should be protected. First, the Debtor's business is the production of heart catheters. As such, there is the ongoing possibility of an existing, but unasserted, medical malpractice claim. PYA as the buyer is assuming no responsibility for any such claims or lawsuits that are an inherent risk of the Debtor's business. Second in September of 2010, the Debtor received a registered letter from counsel for Endoscopic Technologies, Inc., also known as Estech ("Estech"), asserting alleged patent infringement claims. The letter failed to explain the precise nature of the alleged infringement, and Estech has not provided further information, but the Debtor disputes that there is any liability to Estech and asserts that the claims by Estech are completely without merit. Nevertheless, PYA or the successful bidder at the Auction, should be entitled to assurance that it is protected from successor liability from the alleged <u>pre-petition</u> infringement claims of Estech. Without such protection, the Debtor will lose the ability to sell its intellectual property and creditors in turn will be deprived of the value of the Debtor's assets.

    15. The pre- and post-petition relationships of the bidder with the Debtor's current or former officers, directors, agents or employees are as follows: the sole shareholder of PYA is Mr. Peter Yuan according to PYA's counsel. Mr. Yuan holds 47% of the common shares of the Debtor and therefore is considered an "insider" within the meaning of and has at various times provided equity funding to the Debtor, most recently in February 2009, in excess of $35,000,000. The Debtor expects Mr. Yuan to provide a declaration regarding these and related issues prior to the Auction.

    16. The Debtor understands that, although PYA has not entered into any employment agreements with current or former employees, officers or directors of the

MOTION FOR ORDER APPROVING SALE OF SUBSTANTIALLY ALL ASSETS OF THE DEBTOR FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS

6

Debtor, at least one member of its Board of Directors, Dr. Phil Radlick, Ph.D, may be offered employment by PYA. PYA has informed the debtor that it also plans to attempt to negotiate with other current or former employees, officers or directors. To the Debtor's knowledge, PYA has made no promises or representations to any of the Debtors current or former employees, officers or directors regarding future employment.

17. Sale contingencies consist of entry of final, non-appealable orders of the Court approving the sale free and clear of identified claims and encumbrances pursuant to the Purchase Agreement and the assumption and assignment of identified executory contracts, including good faith findings. The Debtor will be engaging in a vigorous effort to provide notice to interested parties of the Auction as has been approved by this Court. If no other parties overbid PYA, it seems unlikely that the assets will be able to be sold for a value approaching that offered by PYA.

18. There has been no pre-petition creditors' committee formed in connection with the Debtor. Other than its normal SEC filings, there have been no written communications with shareholders of the Debtor regarding the proposed sale.

19. The Debtor expects that its administrative expenses between now and the close of escrow will consist predominantly of monthly: (i) facilities expenses, including rent, utilities and alarm of approximately $33,750; (ii) payroll, related taxes and benefits for its remaining employees of $59,900; (iii) patent and regulatory renewal fees of $2,000; (iv) miscellaneous equipment leases and executory contracts (pending assumption or rejection) of $5,933; (v) liability insurance of $19,500; (vi) shipping, janitorial and miscellaneous overhead of $4,000; (vii) U.S. Trustee fees; (viii) the costs of notice and advertisement of the Auction and Sale Hearing ; and, (ix) closing costs. The Debtor estimates the total administrative expenses until close of escrow, exclusive of professionals' fees, to be approximately $275,000. The Debtor has cash on hand on the Petition Date of $153,600. The sale would produce net proceeds to pay unsecured creditors with estimated claims of $1.032 million (excluding unknown claims) as follows: (a) approximately $350,000 would be paid by PYA directly to Stellartech to cure of defaults under the Stellartech contracts that will be assumed and assigned to PYA; (b) the remaining sale proceeds would be available to

MOTION FOR ORDER APPROVING SALE OF SUBSTANTIALLY ALL ASSETS OF THE DEBTOR FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS

7

pay unsecured creditors with claims of approximately $682,000. Unsecured creditors could therefore possibly receive a dividend as high as 50% depending on professional fees and related reorganization costs based upon the sale proposed in the Purchase Agreement. .

20. A full copy of the Order Approving Motion for Overbid Procedures and Related Matters re: Sale of Assets of the Debtor is attached to the accompanying Memorandum of Points and Authorities as Exhibit "A." If no timely, conforming bids are submitted, Debtor shall request at the conclusion of the auction that the Bankruptcy Court approve the proposed sale of the Purchased Assets to PYA on the terms set forth in the Purchase Agreement. In the event that one or more timely, conforming bids is submitted, Debtor shall request that the Bankruptcy Court conduct an auction for the Purchased Assets at the Sale Hearing in which PYA and all qualified bidders may participate. For purposes of the Auction, PYA shall be deemed a qualified bidder and the Purchase Agreement shall constitute a qualified bid.

WHEREFORE, the Debtor respectfully requests that the Court approve the sale of substantially all of the Debtor's assets free and clear if all liens, claims, and encumbrances at the conclusion of the Auction to the bidder approved by the Court, and, if that bidder fails to close, to back up bidders in the order approved by the Court.

Date: January 14, 2011          BINDER & MALTER LLP


                                By /s/ Robert G. Harris
                                    Attorneys for Debtor

MOTION FOR ORDER APPROVING SALE OF SUBSTANTIALLY ALL ASSETS OF THE DEBTOR FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS

8