HEINZ BINDER, #87908
ROBERT G. HARRIS, #124678
JULIE H. ROME-BANKS, #142364
ROYA SHAKOORI, #236383
Binder & Malter, LLP
2775 Park Avenue
Santa Clara, CA 95050
Telephone: (408)295-1700
Facsimile: (408) 295-1531
Email: heinz@bindermalter.com
Email: rob@bindermalter.com
Email: julie@bindermalter.com
Email: roya@bindermalter.com

Attorneys for Debtor

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

| | |
|---|---|
| In re<br><br>CARDIMA, INC., a Delaware corporation,<br><br>Debtor. | Case No. 10-74445-RLE<br><br>Chapter 11<br><br>Date: February 18, 2011<br>Time: 10:00 a.m.<br>Courtroom: 201 |

### PRE-HEARING STATEMENT REGARDING MOTION FOR ORDER APPROVING SALE OF SUBSTANTIALLY ALL ASSETS OF THE DEBTOR FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS AND REQUEST FOR AUCTION

Debtor and debtor in possession Cardima, Inc. (the "Debtor") hereby submits its Pre-Hearing Statement Regarding Motion for Order Approving Sale of Substantially All Assets of the Debtor Free and Clear of Liens, Claims, Encumbrances and Interests and Request for Auction. The purpose of this filing is to inform the Court of the receipt of a timely overbid supported by a good faith deposit and the issues that must be addressed prior to the auction and at the sale hearing.

The Debtor respectfully represents as follows:

///

PRE-HEARING STATEMENT REGARDING MOTION FOR ORDER APPROVING SALE OF SUBSTANTIALLY ALL ASSETS OF THE DEBTOR FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS AND REQUEST FOR AUCTION
PAGE 1

Case: 10-74445   Doc# 82   Filed: 02/16/11   Entered: 02/16/11 17:32:14   Page 1 of 9

### A. Bid Procedures Order Service and Publications Requirements

On January 14, 2011, the Court signed the Order Approving Overbid Procedures and Related Matters Re Sale of Assets of the Debtor (the "Overbid Order"). Since the time of the Court's Overbid Order, the Debtor has substantially complied with such Overbid Order. The details of compliance are as follows:

1. <u>Service of Notice of Sale on all creditors</u>.

The Notice of Hearing on Motion to Sell Substantially All Assets of the Debtor Free and Clear of Liens, Claims, Encumbrances and Interests, to Conduct Auction and to Assume, Assign and Reject Executory Contracts (the "Sale Notice") was timely served upon all creditors and parties of interest by first-class mail on January 14, 2011. A true and correct copy of the Certificate of Service is attached herewith as Exhibit "A".

2. <u>Service of Sale Motion and supporting pleadings on UST, suspected interested parties, entities asserting claim upon assets, SEC or other agencies with interest in relief requested, Estate's twenty largest unsecured creditors, and all parties requesting special notice</u>.

The Motion for Order Approving Sale of Substantially All Assets of the Debtor Free and Clear of Liens, Claims, Encumbrances and Interests (the "Sale Motion") and its related notice, together with all supporting declarations and a copy of the Purchase Agreement, the proposed sale order, and a copy of the Overbid Order were served according to the Overbid Order by first-class mail on January 14, 2011 upon (i) the United States Trustee; (ii) all entities which Debtor suspects may have an interest in purchasing the Purchased Assets; (iii) all entities known to have asserted any lien, claim, interest or encumbrance in or upon the Purchased Assets; (iv) all federal, state, and local regulatory or taxing authorities or recording offices, including the Securities and Exchange Commission, which have a reasonably known interest in

the relief requested by the Sale Motion; (v) the estate's twenty largest unsecured creditors; and (vi) all parties that have filed requests for notices in Debtor's bankruptcy case pursuant to Bankruptcy Rule 2002. A true and correct copy of the Certificate of Service is attached hereto as Exhibit "B". A few of the interested bidders were inadvertently left off of this service list and upon discovery the following business day, January 17, 2011, those parties were served via electronic transmission or overnight mail. A true and correct copy of the Certificate of Service is attached hereto as Exhibit "C".

3. <u>Service of Assumption Motion and supporting pleadings on UST, suspected interested parties, entities asserting claim upon assets, SEC or other agencies with interest in relief requested, Estate's twenty largest unsecured creditors, and all parties requesting special notice</u>

The Motion to Assume and Assign Executory Contracts to the Highest Bidder at Auction and to Reject Remaining Executory Contracts (the "Assumption Motion") and its related notice, together with supporting declaration and memorandum of points and authorities were served by first-class mail on January 14, 2011 in accordance with Bankruptcy Local Rule 6006-1(a) on (i) the estate's twenty largest unsecured creditors; (ii) all parties that have filed requests for notices in Debtor's bankruptcy case pursuant to Bankruptcy Rule 2002 (iii) all persons and entities who or which are parties to executory contracts and leases with the Debtor and whose executory contracts or leases are to be assumed and assigned or rejected in connection with the Assumption Motion and the Debtor also served (iv) the United States Trustee and (v) the Securities and Exchange Commission. A true and correct copy of the Certificate of Service is attached hereto as Exhibit "D". In addition, the Sale Notice which included notice of the Assumption Motion was served on all creditors and all entities which Debtor suspected may have an interest in purchasing the Purchased

PRE-HEARING STATEMENT REGARDING MOTION FOR ORDER APPROVING SALE OF SUBSTANTIALLY ALL ASSETS OF THE DEBTOR FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS AND REQUEST FOR AUCTION

PAGE 3

Case 10-74445    Doc# 82    Filed: 02/16/11    Entered: 02/16/11 17:32:14    Page 3 of 9

Assets. This is reflected in the Certificate of Service referenced in paragraph 4(a) above and attached as Exhibit "A" hereto.[1]

    4.    <u>One publication each during the weeks of January 21, 2011 and January 28, 2011 in the San Jose Mercury News, the San Francisco Chronicle, the Northern California regional edition of the Wall Street Journal and any trade publications that the Debtor believes appropriate</u>.

According to the Overbid Order and subsequent Order Approving Ex Parte Application to Modify Bid Procedures Order (the "Modified Bid Order"), the Debtor published a Court-approved advertisement with the San Jose Mercury News on January 27, 2011 and January 31, 2011. A true and correct copy of the proof of publication for San Jose Mercury News is attached hereto as Exhibit "E". The Debtor published its advertisement with the San Francisco Chronicle on January 27, 2011 and January 31, 2011. A true and correct copy of the proof of publication for San Francisco Chronicle is attached hereto as Exhibit "F". The Debtor also published its advertisement nationally with the Wall Street Journal on January 28, 2011[2]. A true and correct copy of the proof of publication for the national edition of the Wall Street

---

[1] According to the Court's Order, it appears the Assumption Motion should also have been served on the parties expressing interest in purchasing the assets of the Debtor, but was not in fact served on those parties, and this was not realized until preparation of this Pre-Hearing Statement. The service of the Assumption Motion would otherwise have been appropriate according to the Bankruptcy Local Rules 6006-1(a). Debtor's counsel did however serve the Sale Notice which included notice of the Assumption Motion and therefore these interested bidders are believed to have been put on notice of the Assumption Motion.

[2] By the time that the Debtor made its application to the Court for a revised order regarding advertising with the Wall Street Journal, the Debtor was not able to meet the Northern California regional edition deadline for submitting its advertisement and therefore submitted its advertisement nationally to be able to publish something immediately rather than wait an additional week for the next regional publication. Therefore the publication occurred on January 28, 2011 rather than by January 27, 2011 which would be the week of January 21, 2011 in accordance with the Court's Order.

PRE-HEARING STATEMENT REGARDING MOTION FOR ORDER APPROVING SALE OF SUBSTANTIALLY ALL ASSETS OF THE DEBTOR FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS AND REQUEST FOR AUCTION

PAGE 4

Case: 10-74445   Doc# 82   Filed: 02/16/11   Entered: 02/16/11 17:32:14   Page 4 of 9

Journal is attached hereto as Exhibit "G". On February 2, 2011, the Debtor published the advertisement with the Wall Street Journal's Northern California regional edition. A true and correct copy of the proof of publication for the Northern California regional edition of the Wall Street Journal is attached hereto as Exhibit "H". Finally, the Debtor also published its advertisement with a trade magazine entitled Medical Product Manufacturing News in its January/February 2011 edition which was circulated to its subscribers on January 31, 2011. A true and correct copy of the proof of publication for the magazine is attached hereto as Exhibit "I".

In an attempt to encourage bidding, Debtor's counsel contacted every party who expressed interest in the sale of the Debtor's assets on multiple occasions to answer questions, provide further communication and to put them in touch with the Debtor for a site inspection of the Debtor's facility, should they be interested. A log of those contacts is attached as Exhibit "A" to the Declaration of Roya Shakoori filed in support of this statement.

B.  Receipt Of Written Overbid

1. On February 15, 2011 at 9:57 a.m., Debtor's counsel received the electronic transmission attached hereto as Exhibit "J" as an overbid by River Medtech, Inc., a California Corporation. Debtor's counsel believes River Medtech, Inc. is a corporation formed specifically for acquiring the assets of Cardima, Inc. and to be an overbidder at the sale hearing/auction. It is believed that River Medtech, Inc. is an associated or related company of Sichuan Jinjiang Electronic Science and Technology Co., Ltd. based out of China, whom the Debtor and Debtor's counsel have been in communication with since February 10, 2011 when they began expressing great interest in a purchase of the Debtor's assets.

2. According to the Order Granting Ex Parte Application to Modify Bid Procedures Order to Extend Deadline for Delivery of Good Faith Deposit (the "Deposit Order"), the time within which a good faith deposit must be received was extended from

February 15, 2011 at 10:00 a.m. until February 16, 2011 at 10:00 a.m. in order to accommodate River Medtech, Inc. Debtor's counsel received funds in the amount of $100,000 representing River Medtech, Inc's good faith deposit on February 14, 2011 at 1:05 p.m. (PST).

3. The overbid received from River Medtech, Inc. is not yet in conformity with the Court's Overbid Order. Debtor's counsel on February 16, 2011, transmitted to River Medtech an email explaining its concerns and invites the overbidder to address them promptly so that it can be qualified as an over-bidder at auction. The email stated the following:

> Thank you for the timely offer of River Medtech to participate in the Cardima auction on February 18, 2011. I am writing to advise you that the offer not conform with the terms of the overbid procedures order in the following respects:
>
> 1. The time for increasing the good faith deposit from $100,000 to the full purchase price is 5 days according to the order. In number 2 below you imply that there may be delay arising from the need to obtain approval from the Chinese government to transfer funds of this magnitude. A delay beyond 5 days places the estate at risk. Any modification of this deadline will have to be approved by the court before your client can be qualified to participate in the auction.
>
> 2. My prior email deals with the requirement of evidence of your client's ability to perform financially. Something more than a letter from the parent company is required. We would also need evidence that Sichuan Jinjiang would be contractually obligated to pay the purchase price. Alternatively, Sichuan Jinjiang or River Medtech could post an irrevocable letter of credit for the full purchase price to deal with both items one and two. The bank statements received are, of course, in Chinese. [3]
>
> 3. It is within a bidder's purview not to assume all executory contracts being assumed by P. Y. Acquisition ("PYA"). We understand that your client is not going to assume the lease with the current landlord but would prefer to stay for only six months and then terminate. This will require lessor consent for time more than 210 days post-petition. Not taking the

---

[3] The letter of intent to perform by Sichuan Jinjiang Electronic Science and Techonology Co., Ltd. and referenced bank statements are attached to the Declaration of Roya Shakoori in support of this Pre-Hearing Statement as Exhibit "B" and incorporated herein.

PRE-HEARING STATEMENT REGARDING MOTION FOR ORDER APPROVING SALE OF SUBSTANTIALLY ALL ASSETS OF THE DEBTOR FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS AND REQUEST FOR AUCTION
PAGE 6

Case 10-74445    Doc# 82    Filed: 02/16/11    Entered: 02/16/11 17:32:14    Page 6 of 9

space makes Rover Medtech's offer different than PY Acquisition's: landlord would have a rejection damages claim of approximately $249,824.74. These damages add to total claims and decrease recovery to creditors by roughly $50,000 at the bid level you have offered. As the auction price rises the differential disappears entirely at a level of roughly $1.4 million gross. You should consult with bankruptcy counsel about the best way to address this issue at a gross price lower than $1.4 million.

4. Finally, we understand that you have reserved the right to make further amendments. We read this to mean that changes of the typographical or minor nature are to be permitted on the asset purchase agreement and related documents. To be clear only non-material and non-substantive amendments can be made. With this restriction the condition does not make the offer non-conforming.

The Debtor hopes that there will, in fact, be an auction at the February 18th hearing, but qualification of River Medtech is up to the Court once the issues raised above (and any other that may be raised by PY Acquisition) have been addressed.

C. Request For Findings Regarding Sale Free and Clear of Threatened Claim Of Patent Infringement.

The Debtor may sell the free and clear of claims made by Endoscopic Technologies, Inc. ("Estech"). In its original motion to sell its assets the Debtor explained that in September, 2010, Estech sent a cease-and-desist letter to the Debtor claiming the Debtor was infringing on patents in which Estech claimed it owned an interest. The letter was in such general terms, however, that the Debtor could not determine what, exactly, was the nature of Estech's allegation. See Declaration of. Edward J. Lynch in Support of Motion for Order Approving Sale of Substantially All Assets of the tebtor Debtor Free and Clear of Liens, Claims, Encumbrances, and Interests ("Lynch Decl"). Since the original filing the Debtor has brought its patent counsel into the fray to explain the situation to the parties and the Court.

In an excess of caution, the Debtor had identified Estech's potential interest as one from which the Debtor seeks to sell its property free and clear. Estech has not responded to the Debtor's motion to sell its assets, either with an objection or any filing to clarify the nature of Estech's claim. This failure to respond should be deemed to be

PRE-HEARING STATEMENT REGARDING MOTION FOR ORDER APPROVING SALE OF SUBSTANTIALLY ALL ASSETS OF THE DEBTOR FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS AND REQUEST FOR AUCTION
PAGE 7

Case 10-74445    Doc# 82    Filed: 02/16/11    Entered: 02/16/11 17:32:14    Page 7 of 9

Estech's implied consent to this sale. Such implied consent is sufficient to authorize the sale free and clear of Estech's claim pursuant to §363(f)(2). <u>In re Ellion Citicorp Homeowners Services, Inc. v. Elliot</u> 94 B.R. 343,345 (E.D. Penn. 1988).

Further, any interest Estech might be claiming in its letter describes no more than a *bona fide* dispute, so the assets could be sold free and clear of Estech's claims for pre-petition infringement under 11 U.S.C. §363(f)(4). This is, in large part, because *nothing in Estech's cease-and-desist letter asserts or suggests that the Estech has any ownership interest in the patents that the Debtor seeks to sell or that the Debtor's patents are in any way invalid*. Thus, Eschech's claim of infringement is an "interest" only in the broadest sense that "the term 'any interest' is intended to refer to obligations that are connected to or rise from, the property being sold. "<u>In re TransWorld Airlines, Inc</u>. 322 F3d 283, 289 (3rd Cir. 2003), <u>see also</u>, <u>In re Leckie Smokeless Coal Co.</u>, 99 F.3d 573, 582 (4th Cir.1996) (stating that a relationship between a claim and the use of the sold assets creates an interest under section 363( f)).

Because the cease-and-desist letter provides so little information, the Debtor was never able to determine precisely what infringement Estech was claiming. Based on the investigation it has done, however, the Debtor has no reason to believe that any of the assets it is selling infringe on anyone else's intellectual property, including Estech's. Any claim, were it made, would be vigorously and almost certainly successfully defended.

As stated in the initial motion, the Debtor does not ask that the successful bidder be granted any protection for post-sale or even post-petition infringement. Case law would prohibit such injunction . <u>See e.g.</u> <u>Curtis Mfg. Co., Inc. v. Platsi-Clip Corp.</u> 933 F. Supp. 107 (D.N.H. 1995) [Confirmation of a Chapter 11 Plan did not bar a patent holder from prosecuting an infringement action against reorganized debtor for post-petition action.] Rather, the Debtor seeks simply to assure that the assets are sold free of any claims arising from claims related to Debtor's actions prior to the sale, and that no claim

PRE-HEARING STATEMENT REGARDING MOTION FOR ORDER APPROVING SALE OF SUBSTANTIALLY ALL ASSETS OF THE DEBTOR FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS AND REQUEST FOR AUCTION
PAGE 8

Case 10-74445    Doc# 82    Filed: 02/16/11    Entered: 02/16/11 17:32:14    Page 8 of 9

of patent infringement that occurred prior to the sale can be made against the buyer as successor to the Debtor.

### D. Amended Cure Amount for Assumed Contracts

Since the filing of its Assumption Motion, Exhibit "A" to that motion has been amended to (i) eliminate $9,169 that was originally listed as an amount owed to Stellartech Research Corporation, but is in fact an unsecured vendor debt owed to Stellar Technologies and therefore not included in the assumed contracts; and (ii) to add $580 owed to Dennemeyer & Company for a pre-petition amount owed that the Debtor only became aware of recently. This additional $580 shall be paid from the sale proceeds at the close of escrow. The Amended Exhibit "A" to the Assumption Motion is attached hereto as Exhibit "K" and was filed with the Court on or about February 15, 2011.

Dated: February 16, 2011    BINDER & MALTER, LLP

By: /s/ Robert G. Harris
　　Robert G. Harris

Attorneys for Debtor Cardima, Inc.

F:\Clients\Cardima, Inc\Pleading\Sale of Assets\2-15-11 Sale Support Pleadings\MotionStatusStmt.wpd

PRE-HEARING STATEMENT REGARDING MOTION FOR ORDER APPROVING SALE OF SUBSTANTIALLY ALL ASSETS OF THE DEBTOR FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS AND REQUEST FOR AUCTION
PAGE 9